**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

| | | |
|---|---|---|
| KSENIA SEDELNIKOVA, | * | |
| | * | |
| Plaintiff, | * | Civil Action No. 09-CV-2398 |
| | * | |
| v. | * | |
| | * | |
| THE CHEESECAKE FACTORY | * | |
| RESTAURANTS, INC. | * | |
| | * | |
| Defendant. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OF DEFENDANT THE CHEESECAKE FACTORY
RESTAURANTS, INC. IN SUPPORT OF MOTION TO STAY
<u>PROCEEDINGS AND TO COMPEL ARBITRATION</u>**

**I.     FEDERAL POLICY FAVORS ARBITRATION OF DISPUTES.**

This Memorandum is in support of Defendant The Cheesecake Factory Restaurants,

Inc.'s ("Cheesecake Factory") Motion to Stay Proceedings and to Compel Arbitration (the

"Motion") of the claims of Plaintiff Ksenia Sedelnikova ("Sedelnikova") raised in this case. As

discussed below, federal law compels the granting of the Motion.  The Federal Arbitration Act, 9

U.S.C. Section 1 et seq. ("Arbitration Act"), establishes that federal policy strongly favors

arbitration of legal disputes.  *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226

(1987), citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (the

Supreme Court agrees with the consistent conclusion of the federal courts of appeals that

questions of arbitrability must be addressed with a healthy regard for the federal policy favoring

arbitration.); s*ee also American Gen. Life and Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th

Cir. 2005) (Federal Arbitration Act reflects liberal federal policy favoring arbitration agreements).  For this reason, the federal courts are required to "rigorously enforce" agreements to arbitrate.  *Shearson/American Express*, 482 U.S. at 226.[1]  The Federal Arbitration Act further authorizes a party to an arbitration agreement to demand a stay of proceedings in order to pursue arbitration provided that the applicant for the stay is not in default.  *Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc*., 380 F.3d 200, 204 (2004).

## II.     CHEESECAKE FACTORY AND SEDELNIKOVA AGREED TO ARBITRATE THEIR DISPUTES.

### A.     Sedelnikova Signed And Initialed An Enforceable Arbitration Agreement.

On or about December 11, 2008, Sedelnikova signed a two page document entitled Handbook Receipt & Confidentiality Agreement agreeing, *inter alia*, to arbitrate any disputes between her and the Cheesecake Factory.  On the second page of this document, two paragraphs above her signature line, Sedelnikova initialed the following paragraph:

> I recognize that differences may arise between me and the Company during, or following, my employment with the Company.  I agree to participate in impartial dispute-resolution proceedings as a condition of and as consideration for the offer of employment by the Company.  If I, or the Company, determine that the Company's internal procedures for handling claims (including but not limited to, reporting claims to my manager, the Area Director of Operations, the CARELINE, and/or the Staff Relations Department), have not resulted in a mutually acceptable resolution of disputes between me and the Company, I agree to participate in arbitration proceedings.

See Handbook Receipt & Confidentiality Agreement, attached to the Motion as Exhibit A.

---

[1]     Congress intended the Federal Arbitration Act to foreclose any state legislative attempts to undercut enforceability of arbitration agreements.  *Walther v. Sovereign Bank*, 386 Md. 412, 423 (2005).  The Maryland Uniform Arbitration Act mirrors the Federal Arbitration Act and equally favors enforcement of arbitration agreements.  *Id*. at 424-425.

Earlier this year, the United States District Court for the District of Arizona held that this same exact language constituted an enforceable agreement to arbitrate employment related statutory and tort claims.  *Equal Employment Opportunity Comm'n v. The Cheesecake Factory, Inc*., 2009 WL 1259359 (D. Ariz. 2009).  The Court found that the arbitration agreement entered into by plaintiff intervenors in that case was neither procedurally nor substantively unconscionable and that the scope of the arbitration agreement included all of their claims rising out of their employment with The Cheesecake Factory, Inc.  *Equal Employment Opportunity Commission*, 2009 WL 1259359 at * 6; s*ee also MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 246 (4th Cir. 2001) (acknowledgment of receipt of handbook which included paragraph requiring arbitration was enforceable arbitration agreement); *O'Neil v. Hilton Head Hosp.,* 115 F.3d 272, 275 (4th Cir. 1997) (arbitration clause included in form acknowledging receipt of employee handbook was valid and enforceable.)  Thus, Sedelnikova and Cheesecake Factory entered into an agreement to arbitrate any disputes arising between them.

**B.    The Arbitration Agreement Is Not Illusory.**

Whether the parties agreed to submit their disputes to arbitration is to be determined by reference to state contract law, in this case Maryland contract law.[2]  In order to provide sufficient consideration for the arbitration agreement, Cheesecake Factory's promise to resolve any disputes with Sedelnikova through arbitration cannot have been illusory.  *Dieng v. College Park Hyundai*, 2009 WL 2096076 at * 3 (D. Md. 2009).  For example, in *Cheek v. United Healthcare of the Mid-Atlantic, Inc*., 378 Md. 139 (2003), the Maryland Court of Appeals held that an

---

[2]    There is no dispute that the alleged events which form the basis of Sedelnikova's claims are alleged to have occurred in Maryland.  See Complaint [Docket. No. 2].

arbitration agreement lacked consideration because the defendant retained an unlimited right to alter or revoke its promise to submit to arbitration.

In the instant case, while the Cheesecake Factory in its Staff Member Handbook does reserve the right to change or revise policies, procedures and benefits described in the handbook, the agreement to arbitrate disputes was set forth in a separate Handbook Receipt & Confidentiality Agreement, which contained a separate paragraph setting forth the agreement to arbitrate, which Sedelnikova separately initialed.  In the paragraph containing the arbitration agreement, the Cheesecake Factory did not claim to have the right unilaterally to change, revise or revoke the arbitration agreement.  See Exhibit A.

This issue was addressed by the Court in *Dieng v. College Park Hyundai*, *supra*. Plaintiffs therein argued that the holding of *Cheek* applied because the arbitration agreement in *Dieng* was located in an employee handbook which gave the defendant the right unilaterally to change or modify the policies or benefits contained therein.  2009 WL 2096076 at * 3.  However, the Court in *Dieng* rejected that argument.  The Court held that the arbitration agreement was not a policy or benefit contained in the employee handbook and, therefore, was not affected by the defendant's ability to change or revoke unilaterally the policies set forth in the handbook.  2009 WL 2096076 at * 4.  The same is true for the arbitration agreement at issue herein.  The Court furthermore held in *Dieng* that there were separate acknowledgements (1) for agreement to the policies in the handbook and (2) for the agreement to arbitrate.  In the instant case, there were also separate paragraphs acknowledging Sedelnikova's agreement (1) to abide by the policies in the Cheesecake Factory's Staff Member Handbook and (2) for her agreement to arbitrate

disputes between her and the Cheesecake Factory.  In fact, Sedelnikova was required to initial each paragraph for each agreement separately.  See Exhibit A.

It was also not necessary for the Cheesecake Factory to expressly state that it was bound by the arbitration agreement in order for the agreement to be enforceable.  Relying on the decision of the Fourth Circuit in *O'Neil v. Hilton Head Hospital*, *supra*, in which the plaintiff signed an acknowledgement form agreeing to submit all employment disputes to arbitration, the Court in *Dieng* found, as did the Fourth Circuit, that "such a proffer clearly implied that both the employer and the employee would be bound by the arbitration process."  2009 WL 2096076 at * 4; s*ee also MicroStrategy,* 268 F.3d at 248-249 (arbitration agreement did not have to be signed by the president of the company to be binding).

Given the federal and Maryland policy strongly favoring arbitration, the arbitration agreement between Sedelnikova and the Cheesecake Factory is clearly enforceable and not illusory.  The parties unambiguously agreed to arbitrate all disputes between them, and the Cheesecake Factory did not reserve the right to alter, change or revoke the separate agreement to arbitrate.  As was determined in this Court's decision in *Dieng*, any contention to the contrary should be rejected.

C.      <u>**The Arbitration Agreement At Issue Is Not Unconscionable.**</u>

The arbitration agreement at issue herein is neither procedurally nor substantively unconscionable.  "Substantive unconscionability involves those one-sided terms of a contract from which a party seeks relief (for instance, 'I have the right to cut off one of your child's fingers for each day you are in default'), while procedural unconscionability deals with the process of making a contract – 'bargaining naughtiness' (for instance, 'Just sign here; the small

print on the back is only our standard form.')" *Carlson v. General Motors Corp.*, 883 F.2d 287, 296, n. 12 (4th Cir. 1989).  On its face, the arbitration agreement at issue herein neither uses "fine print" nor convoluted or unclear language.  It further does not contain terms which are unreasonably or grossly favorable to the Cheesecake Factory as opposed to Sedelnikova.  To the contrary, the agreement clearly and concisely states that all disputes between the parties – if they cannot be settled by internal procedures – will be settled by arbitration.  The agreement does not seek to carve out any types of disputes from arbitration.

To the extent Sedelnikova may claim that she did not notice or read the arbitration agreement, such a claim of procedural unconscionability was soundly rejected in *Walther*, 386 Md. at 444,[3] as pointed out in *Dieng*, 2009 WL 2096076 at * 5.  Indeed, any claim by Sedelnikova that the arbitration agreement was so inconspicuous that she did not understand she was agreeing to arbitrate disputes would be completely without merit.  *See Dieng,* 2009 WL 2096076 at * 5 (agreement was not buried in the middle of a lengthy contract nor written in fine print); *Walther*, 386 Md. at 428-429 (citing cases rejecting procedural unconscionability where the arbitration agreement was immediately or almost immediately succeeded by a signature line).  The agreement at issue herein was set forth in a separate paragraph, <u>which Sedelnikova was required to, and did, initial</u>, and was set forth only two paragraphs above her signature line.  "In its simplest terms, petitioners argue that they should not be held to an agreement that they signed but did not take the time to read.  There must exist something more before we can find the arbitration clause at issue to be unconscionable."  *Walther*, 386 Md. at 430.

---

[3]     Indeed, the Maryland Court of Appeals labeled the claim that plaintiffs were oblivious to the arbitration clause as "specious at best."  *Walther*, 386 Md. at 428.

To the extent Sedelnikova may claim that the arbitration agreement is a contract of adhesion, that argument was also rejected in *Dieng,* which held that a contract of adhesion is not automatically deemed *per se* unconscionable under Maryland law.  *Dieng*, 2009 WL 2096076 at page 4; s*ee also Walther*, 386 Md. at 431 (issue is whether the terms are so one-sided as to oppress or unfairly surprise an innocent party or whether there is an egregious imbalance in the obligations and rights imposed).  The arbitration agreement at issue herein is simple and straightforward, and it does not impose any oppressive or unfair obligations on either party.

To the extent that Sedelnikova may claim that the arbitration agreement is unconscionable because it is silent as to who bears the responsibility for the costs of the arbitration, that argument was also rejected in *Dieng*.  In *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 84, 92 (2000), the Supreme Court held that a party seeking to invalidate an arbitration agreement on the ground that arbitration would purportedly be excessively expensive bears the burden of showing the likelihood of incurring such costs and that silence as to the costs of arbitration is insufficient to render an arbitration agreement unenforceable.  *See also Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549 (4th Cir. 2001) (rejecting argument that fee splitting provision *per se* invalidated arbitration agreement because an appropriate case by case inquiry must focus on a claimant's expected or actual arbitration costs and his ability to pay those costs, measured against a baseline of the claimant's expected costs for litigation and his ability to pay costs).  Should Sedelnikova advance such an argument, these decisions make it clear that it is her burden to demonstrate that arbitration will be significantly

more costly than litigation,[4] that she cannot afford such additional costs, and that her counsel is unwilling or unable to advance her litigation costs regardless of whether she litigates in court or in arbitration.

**D.      Cheesecake Factory Has Not Waived Its Right To Demand Arbitration.**

Sedelnikova may claim that the Cheesecake Factory waived its right to demand arbitration by filing an answer in this Court before filing its motion to stay proceedings and to compel arbitration.[5]   However, Sedelnikova has a heavy burden in attempting to establish that the Cheesecake Factory waived its right to arbitrate.  *MicroStrategy*, 268 F.3d at 250; *Patten Grading*, 380 F.3d at 204.  In the case of an alleged waiver of the right to arbitrate disputes, the intent to waive that right "must be clearly established and will not be inferred from equivocal acts or language."  [Citations omitted.]  *Brendsel v. Winchester Constr. Co., Inc.*, 392 Md. 601, 610-611 (2006).  The circumstances giving rise to default or waiver are limited and, in light of the federal policy favoring arbitration, are not to be lightly inferred.  *MicroStrategy*, 268 F.3d at 249; *Patten Grading*, 380 F.3d at 204.  Under this standard, no such default or waiver on the part of Cheesecake Factory can be established by Sedelnikova.

First, as pointed out in *Walther v. Sovereign Bank*, *supra*, it was Sedelnikova's own duty to initiate arbitration pursuant to the agreement she entered into.  Her filing a legal action rather

---

[4]      It has been recognized that "arbitration agreements are generally a less expensive and more expeditious means of settling litigation and relieving docket congestion.…" *Walther*, 386 Md. at 425.

[5]      While the Cheesecake Factory served interrogatories and requests for documents and noticed Sedelnikova's deposition, it withdrew such discovery demands before Sedelnikova responded, including the notice of Sedelnikova's deposition.

than seeking arbitration created the very situation where Cheesecake Factory had to respond in some fashion to her lawsuit.  *Walther*, 386 Md. at 447-449.  Consequently, Cheesecake Factory was forced to remove the lawsuit to this Court and file an answer.  Moreover, the Court has not even come close to a determination of any of the issues raised by Sedelnikova in her Complaint.  *See Walther*, 386 Md. at 447-449; *Brendsel*, 392 Md. at 615-616 (parties deemed to have waived arbitration if they proceed to trial, or have significantly prepared for trial); s*ee also Redemptorists v. Coulthard*, 145 Md. App. 116 (2002) (mere filing of motion to dismiss for lack of jurisdiction was not a waiver of right to arbitration).

Even where a party seeking arbitration has invoked the litigation machinery to some degree, the dispositive issue is whether the party opposing arbitration has suffered actual prejudice.  *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc*., 817 F.2d 250, 252 (4th Cir. 1987).  Without more, neither delay nor the filing of pleadings by the party seeking a stay pending arbitration will establish a waiver.  *Id.*

In *MicroStrategy Inc. v. Lauricia*, *supra*, the Fourth Circuit vacated the district court's order denying a motion to stay the action and compel arbitration and remanded with instructions to compel arbitration.  It did so even though it found, as did the district court, that MicroStrategy's litigation strategy up to its motion to compel arbitration was "remarkably aggressive."[6]  *MicroStrategy*, 268 F.3d at 248.  The Fourth Circuit concluded that Lauricia failed

---

[6]     Prior to the motion to compel arbitration, MicroStrategy had (1) deposed the opposing party, (2) successfully sought the seizure of documents which it believed contained trade secrets, (3) received responses to interrogatories and requests for documents, and (4) obtained the opposing party's employment records from her former employers.  *MicroStrategy*, 269 F.3d at 254.  Nothing like that has occurred in this case.

to carry her "heavy burden" of establishing that she suffered legally significant prejudice from MicroStrategy's litigation activities.  *Id*. at 254.

The Fourth Circuit also reversed a district court's denial of a motion to compel arbitration in *Patten Grading & Paving, Inc. v. Skanska USA Building, Inc*., *supra*.  As in this case, defendant Skanska removed the action to federal court and filed its answer.  The parties in *Patten Grading* also exchanged written discovery, including interrogatories and requests for documents.[7]  *Patten Grading*, 380 F.3d at 203.  Plaintiff Patten Grading argued that arbitration had been waived because (1) Skanska had failed to raise the arbitration clause as an affirmative defense and delayed seeking arbitration, (2) Skanska had participated in pre-trial activity, (3) trial was imminent in the case,[8] (4) Skanska had participated in court ordered mediation,[9] and (5) Patten Grading had incurred $5,948.06 in litigation expenses and would face $8,500.00 in arbitration fees.  *Patten Grading*, 380 F.3d at 204.  Despite these arguments, the Fourth Circuit found that "[g]iven the comparatively restrained pre-trial activity engaged in by Skanska, the strong policy favoring arbitration, and the heavy burden borne by the non-movant, we cannot conclude that Patten has made the requisite showing of prejudice."  *Patten Grading*, 380 F.3d at 208-209.

Any arguments raised by Sedelnikova would clearly be even less compelling than those raised in the *Patten Grading* case.  Here the Complaint was filed in State court on August 6,

---

[7]     As stated above, Cheesecake Factory withdrew its discovery demands prior to receiving any responses from Sedelnikova.

[8]     No trial date as been set in this case.

[9]     No mediation has been ordered or taken place in this case.

2009 and the case was removed to this Court on September 11, 1009, far short of the eight month delay argued in the *Patten Grading* case.  *See Patten Grading*, 380 F.3d at 205 (delays of four months, without more, are insufficient to demonstrate a party's waiver of its right to arbitration).[10]

The Fourth Circuit also found that "a party's filing of minimal responsive pleadings, such as an answer or compulsory counter-claim, are not necessarily inconsistent with an intent to pursue arbitration …" and that "[t]he minimal nature of the discovery conducted in this case falls well within the scope of discovery we have previously found insufficient to establish prejudice." *Patten Grading*, 380 F.3d at 206-207.  In contrast to *Patten Grading,* where there was an exchange of interrogatories and requests for documents, Cheesecake Factory has done no more than file an answer, since it withdrew its discovery demands prior to any response from Sedelnikova.  Given that the Fourth Circuit found the pretrial activity in *Patten Grading* to be too "minimal" to constitute waiver, 380 F.3d at 207, the pretrial activity of Cheesecake Factory certainly does not meet Sedelnikova's heavy burden to demonstrate prejudice.

As to costs, the Fourth Circuit found (1) that the purported costs attributable to Skanska's conduct during the delay in seeking arbitration were much less than claimed, (2) that "the contractual obligation of a non-moving party to pay an arbitration fee may not serve as the basis of a finding of waiver …", and (3) that the Second Circuit concluded that incurring legal

---

[10]     The Fourth Circuit also disagreed that the failure to allege the right to compel arbitration as an affirmative defense constituted a default under Section 3 of Federal Arbitration Act. *Patten Grading*, 380 F.3d at 204-205.

expenses inherent in litigation is, without more, insufficient evidence of prejudice to justify a finding of waiver.  *Patten Grading*, 380 F.3d at 208.

In sum, the Fourth Circuit's decisions in *MicroStrategy* and *Patten Grading* establish that under the facts of this case, Cheesecake Factory did not waive its right to demand arbitration of Sedelnikova's claims against it.

## III.    CONCLUSION.

For the reasons set forth above and under the authority of the Federal Arbitration Act, Defendant Cheesecake Factory respectfully submits that its Motion to Stay Proceedings and to Compel Arbitration should be granted.

December 11, 2009                                    Respectfully submitted,

                                                    /s/_____
                                                    Timothy F. McCormack
                                                    Bar No. 03565
                                                    Michelle M. McGeogh
                                                    Bar No. 28778

                                                    BALLARD SPAHR LLP
                                                    300 E. Lombard Street, 18th Floor
                                                    Baltimore, MD 21202
                                                    Tel.: 410.528.5600
                                                    Fax: 410.528.5650
                                                    mccormackt@ballardspahr.com
                                                    mcgeoghm@ballardspahr.com

                                                    Of Counsel:

                                                    Naomi Young
                                                    BALLARD SPAHR LLP
                                                    2029 Century Park East, Suite 800
                                                    Los Angeles, CA 90067
                                                    Tel.: 424.204.4400
                                                    Fax: 424.204.4350

                                                    Attorneys for Defendant *The Cheesecake Factory Restaurants, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of December, 2009, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Gregg C. Greenberg, Esquire
The Zipin Law Firm LLC
843 Colesville Road, Suite 610
Silver Spring, MD 20910

*Attorney for Plaintiff*

/s/_____
Timothy F. McCormack

DMWEST #7408465 v2