# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# SOUTHERN DIVISION

| | |
|---|---|
| KSENIA SEDELNIKOVA, | * |
| Plaintiff, | * |
| v. | * Civil Action No. AW-09-2398 |
| THE CHEESECAKE FACTORY RESTAURANT, INC., | * |
| Defendant. | * |

## MEMORANDUM OPINION

Plaintiff Ksenia Sedelnikova ("Sedelnikova") brings this action against Defendant The Cheesecake Factory Restaurant, Inc. ("Cheesecake Factory") alleging sexual harassment in violation of Montgomery County Code Section 27 and Maryland Code Article 49(B) Section 42. Currently pending before the Court is Defendant's Motion to Stay Proceedings and to Compel Arbitration (Doc. No. 14). The Court has reviewed the entire record, as well as the pleadings and exhibits with respect to the instant motion. The issues have been fully briefed, and no hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated more fully below, the Court will GRANT Defendant's Motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of multiple instances of sexual harassment Plaintiff experienced during her employment as a server at Cheesecake Factory from 2003 to 2009. On February 6, 2009, Plaintiff filed a discrimination charge with the Montgomery County Commission of Human Rights. Then, on August 4, 2009, Plaintiff filed suit in the Circuit Court for Montgomery County, Maryland. On September 11, 2009, Defendant removed the case to this Court. After answering the Complaint,

1

Defendant moved to compel arbitration in this case.

On or about December 11, 2008, Plaintiff signed pages sixty-five and sixty-six of the employee Handbook. These two pages were entitled "Handbook Receipt & Confidentiality Agreement" ("Handbook Receipt") and Plaintiff initialed each of the nine paragraphs on these pages. The eighth paragraph provided:

> I recognize that differences may arise between me and the Company during, or following, my employment with the Company. I agree to participate in impartial dispute-resolution proceedings as a condition of and as consideration for the offer of employment by the Company. If I, or the Company, determine that the Company's internal procedures for handling claims (including but not limited to, reporting claims to my manager, the Area Director of Operations, the CARELINE, and/or the Staff Relations Department), have not resulted in a mutually acceptable resolution of disputes between me and the Company, I agree to participate in arbitration proceedings.

(Doc. No. 16, Ex. 1). Defendant argues that Plaintiff's initialing this statement and signing the Handbook Receipt requires Plaintiff to submit her claims to arbitration. Plaintiff responds that this paragraph did not constitute a contract to arbitrate.

## II. STANDARD OF REVIEW

The parties do not dispute that the Federal Arbitration Act ("FAA") applies to the employment agreement between Plaintiff and Defendant. Under the FAA, "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[E]ven claims arising under a statute designed to further important social policies may be arbitrated because 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum,' the statute serves its functions." *Green Tree Fin. Corporation-*

2

*Alabama v. Randolph*, 531 U.S. 79, 90 (U.S. 2000) (citations omitted).

The Court decides whether the dispute should be resolved through arbitration, and to so decide, "'engages in a limited review to ensure that the dispute is arbitrable—i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement.'" *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999) (quoting *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir. 1997)). In so doing, the Court applies state contract law principles, unless those principles are only applicable to arbitration provisions. "'State law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with [the text of § 2].'" *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 685 (U.S. 1996) (citations omitted). "When an issue in a judicial proceeding is referable to arbitration, the FAA requires the court, upon a motion of one of the parties, to stay the proceeding until that issue is arbitrated. . . . However, despite the terms of § 3, 'dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable.'" *Oumar Dieng v. College Park Hyundai*, No. 09-68, 2009 U.S. Dist. LEXIS 58785 at *6-7 (D. Md. July 9, 2009) (quoting *Choice Hotels Int'l Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001)).

### III. ANALYSIS

While the arbitration agreement is very general, and could be better differentiated from the other provisions surrounding it, the Court believes the provision qualifies as a valid agreement to arbitrate as the agreement was made with valid consideration, mutual assent and no

3

fatal unconscionability. Next, the Court believes the dispute falls within the scope of the arbitration agreement. Finally, though Defendant has delayed the filing of this Motion to Arbitrate somewhat, the Court does not find that postponement so extreme as to constitute waiver of the right to arbitrate.

  1. **Validity of Agreement to Arbitrate**

Defendant argues that the language Plaintiff initialed in the Handbook Receipt constituted an enforceable agreement to arbitrate employment-related statutory and tort claims. Plaintiff maintains that the arbitration agreement was invalid because Cheesecake Factory gave no consideration for the agreement, there was no mutual assent to arbitrate, and the agreement was procedurally and substantively unconscionable. The Court addresses these claims below, and finds that the agreement to arbitrate was a valid binding contract.

     a.   **Consideration**

It is well established that an arbitration agreement is binding and enforceable only if it is a valid contract supported by consideration. *Cheek v. United Healthcare of the Mid- Atl., Inc.*, 835 A.2d 656, 661 (2003) ("To be binding and enforceable, contracts ordinarily require consideration."). "A promise becomes consideration for another promise only when it constitutes a binding obligation. Without a binding obligation, sufficient consideration does not exist to support a legally enforceable agreement. . . . An 'illusory promise' appears to be a promise, but it does not actually bind or obligate the promisor to anything." *Id.* The Court must limit its review of consideration to the arbitration agreement itself. *Hill v. PeopleSoft USA, Inc.*, 412 F.3d 540, 543-44 (4th Cir. 2005) ("Had the court confined its analysis to the Arbitration Agreement, most assuredly, the court would have concluded that the Arbitration Agreement was supported by

4

consideration.").

Plaintiff argues that Cheesecake Factory did not provide consideration here because in the Handbook Receipt, Cheesecake Factory expressly reserves the right to, in its sole discretion, change policies in the Handbook or other training material, and requires Plaintiff to abide by the changed policy. (Doc. No. 16, Ex. 1.) Defendant concedes that it did reserve the right to change policies described in the Handbook and other training materials, but insists that the arbitration agreement is not part of the Handbook policies, and is thus not subject to that condition of complete revocability.

Though Plaintiff makes credible arguments as to its position that the provision in the Handbook Receipt allowing Cheesecake Factory to change the policies in the Handbook and other training materials encompasses the power to change the arbitration agreement clause, the Court believes that Defendant's arguments prevail. The first paragraph of the Handbook Receipt provides:

> I am aware that The Cheesecake Factory may, in its sole discretion, change, rescind or add to any policies, benefits or practices described in this handbook or other training materials and that I must abide by the new policies and practices.

(Doc. No. 14, Ex. 1.) This Court would certainly find a lack of consideration in this agreement were the Court to consider the arbitration clause part of the revocable Handbook policies and other training materials. *See Cheek*, 835 A.2d at 662 (finding lack of consideration where arbitration agreement was revocable, providing "'United HealthCare reserves the right to alter, amend, modify, or revoke the Policy at its sole and absolute discretion at any time with or without notice'") (citation omitted).

But, the Court ultimately finds that the arbitration agreement is distinct from the Handbook policies. Certainly, the arbitration agreement's presence on page sixty-six of the

5

Handbook lends some weight to Plaintiff's argument that the arbitration policy is part of the Handbook policies. It appears, however, that the arbitration procedures are not present elsewhere in the Handbook, thereby indicating that they are not part of the Handbook procedures.

For its contention that there was consideration for the arbitration agreement, Defendant relies heavily on a case from this District, *Oumar Dieng*, 2009 U.S. Dist. LEXIS 58785, in which the court found that the Defendant employer's power to completely revoke the policies in a handbook did not give the Defendant the same power to revoke an accompanying agreement to arbitrate. The *Oumar Dieng* court found "[t]he facts [were] uncontroverted that the agreement to arbitrate was not a policy or benefit contained in the Employee Handbook and, thus, was not affected by the Company's ability unilaterally to change or revoke the Handbook's policies." *Oumar Dieng*, 2009 U.S. Dist. LEXIS 58785, at *9. The Court reached the conclusion that the arbitration agreement was not a policy contained in the Handbook based on the fact that the Employee Handbook clearly stated it was not a contract, whereas the arbitration agreement used obligatory language indicative of a contract: "'ANY CLAIM THAT ARISES OUT OF, OR RELATES TO, MY EMPLOYMENT OR TERMINATION OF MY EMPLOYMENT WITH THE COMPANY, MUST BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION.'" *Oumar Dieng v. College Park Hyundai*, 2009 U.S. Dist. LEXIS 58785, at *9-10. The *Oumar Dieng* court found that because the written agreement to comply with the rules and procedures of the Handbook was provided as a separate clause on the same page as the agreement to arbitrate, any interpretation of the arbitration agreement as a part of the Handbook policy would render duplicative the arbitration agreement as simply a reassertion of the earlier clause requiring agreement to abide by the policies in the Handbook. *Id.* ("It would be redundant

to require one's employees to sign an acknowledgment form agreeing to all of the policies in the Employee Handbook and then have them sign another agreement on the opposite page reaffirming their consent to abide by a specific policy contained therein.")

The Court finds there was consideration in this arbitration agreement. Applying the *Oumar Dieng* Court's analysis to this agreement, the Court finds it would be superfluous for the employee to agree to the arbitration proceedings for a second time, had they been merely part of the Handbook policies. The Court also agrees with Defendant that the text here is sufficiently separate from the text regarding the Defendant's power to revoke its policies to constitute a separate entity. The paragraph containing the arbitration agreement is quite obviously separate from the other paragraphs in the Receipt, as it requires a separate initialing and it was set out as one of only nine separate paragraphs. The Court believes that the separation of the text in those ways is sufficient to distinguish the arbitration agreement, and that capitalization and bolding of the text is not necessary for purposes of separation, despite Plaintiff's arguments to the contrary. *C.f. David G. Walther v. Sovereign Bank*, 872 A.2d 735, 427-429 (Md. 2005) (arbitration agreement "conspicuously distinct" where it was the final of seventeen paragraphs, was underlined, placed directly above signature); *Patterson v. Tenet Healthcare*, 113 F.3d 832, 835 (8th Cir. 1997) (finding that arbitration clause was separate because"[i]t is set forth on a separate page of the handbook and introduced by the heading, 'IMPORTANT! Acknowledgment Form'" and "there is a marked transition in language and tone").

Additionally, the Court believes the instant arbitration agreement, like the arbitration agreement in *Oumar Dieng*, contains language sufficient to bind the parties to submit to arbitration. Plaintiff contends that the language is not obligatory, but the Court believes that the

7

language "I agree to participate in impartial dispute-resolution proceedings as a condition of and as consideration for the offer of employment by the Company. . . . I agree to participate in arbitration proceedings," conveys a mandatory procedure. (Doc. No. 14, Ex. A.) Additionally, though the language does not specifically bind the Defendant, the Fourth Circuit has found that the Defendant is impliedly bound by such an agreement. *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 275 (4th Cir. 1997) ("A mutual promise to arbitrate constitutes sufficient consideration for this arbitration agreement."). The Fourth Circuit's decision in *O'Neil v. Hilton Head Hospital* is instructive—the Fourth Circuit found that even though the language of an arbitration agreement only bound the Plaintiff employee, the agreement was not illusory because "such a proffer clearly implie[d] that both the employer and the employee would be bound by the arbitration process." *O'Neil*, 115 F.3d at 274. Thus, the lack of explicit mention of Defendant's obligations under the agreement does not render the agreement illusory.

Two Courts have recently reviewed this very arbitration agreement and concluded that there was consideration. *See Smith v. Cheesecake Factory Rests., Inc.*, No. 06-829, 2010 U.S. Dist. LEXIS 9818, at *24-30 (M.D. Tenn. Feb. 3, 2010) (finding consideration and valid arbitration agreement); *EEOC v. Cheesecake Factory, Inc.*, No. 08-1207, 2009 U.S. Dist. LEXIS 41883 (D. Ariz. May 5, 2009) (finding valid arbitration agreement). The Arizona federal district court did not decide whether the arbitration agreement was sufficiently separate and irrevocable because it instead relied on Arizona contract law providing that "when an employer changes the terms of at-will employment, it essentially makes a new offer of employment, and the employee may accept the new offer by performance." *Cheesecake Factory, Inc.*, 2009 U.S. Dist. LEXIS 41883, at *12. That court observed, "even if Cheesecake Factory's right to change 'any policies,

8

benefits or practices described in this handbook or other training material' for the future includes a right to change the Arbitration Agreement, exercising the right would merely create a new offer of employment for the future and could not affect the arbitration as to any prior period of completed work." *Id.* The parties do not address this argument, and the Court will not address it either as the Court has found adequate consideration even absent such a relevant law in Maryland.

### b. Mutual Assent

It is an elementary principle of contract law that "'[o]ne of the essential elements for formation of a contract is a manifestation of agreement or mutual assent by the parties to the terms thereof; in other words, to establish a contract the minds of the parties must be in agreement as to its terms.'" *Safeway Stores, Inc. v. Altman*, 463 A.2d 829, 831 (Md. 1983) (quoting *Klein v. Weiss*, 395 A.2d 126, 141 (Md. 1978)). Plaintiff argues that because one paragraph of the Handbook Receipt provides that the Handbook "cannot and shall not" be construed as a contract, the arbitration clause cannot be construed as a binding contract. As described above, the Court believes that the arbitration agreement language is clearly separate from the Handbook policy, and finds that it is distinct enough from language establishing the Handbook is not a contract so as to not be influenced by it. The Court agrees with the Tennessee federal district court that found that "the arbitration provision here is not the model of specificity," but that there is no indication that mutual assent was absent. *Cheesecake Factory Rests., Inc.*, 2010 U.S. Dist. LEXIS 9818, at *26.

Regarding the overall lack of specificity, the Court observes that the language of the agreement lacked reference to "employment" or "claims," and lacked instructions on how to

9

proceed with arbitration. Such directives may have enabled Plaintiff to better understand the nature of the agreement. *See, e.g. Lang v. Burlington N. R.R.*, 835 F. Supp. 1104, 1105 (D. Minn. 1993) (arbitration agreement stated "[a]ll claims, disputes, or issues related to or arising out of the termination of employment or exempt status of an employee of the company shall be submitted for resolution exclusively by arbitration and only after all internal resolution efforts have been exhausted."); *Hill v. PeopleSoft USA, Inc.*, 412 F.3d 540, 542 (4th Cir. 2005) ("in the Arbitration Agreement, the parties agreed to arbitrate 'all' claims arising out of Hill's employment relationship with PeopleSoft, except for those claims involving workers compensation. . . [and the agreement] sets forth the process for requesting arbitration . . ."). Though the Court does not find the absence of these terms to be fatal, the Court believes the addition of these terms would greatly add to the comprehensibility of the agreement.

### c. Unconscionability

"Maryland contract law on unconscionability contains two components, a procedural and substantive aspect." *Oumar Dieng*, 2009 U.S. Dist. LEXIS 58785, at *12. "An unconscionable bargain or contract has been defined as one characterized by 'extreme unfairness,' which is made evident by '(1) one party's lack of meaningful choice, and (2) contractual terms that unreasonably favor the other party.'" *Walther*, 872 A.2d 735 at 743 (quoting *Black's Law Dictionary* 1560 (8th ed. 2004)). "Substantive unconscionability involves those one-sided terms of a contract from which a party seeks relief . . . while procedural unconscionability deals with the process of making a contract-'bargaining naughtiness' . . . [P]rocedural unconscionability looks much like fraud or duress in contract formation, and substantive unconscionability reminds us of contracts or clauses contrary to public policy or illegal." *Carlson v. General Motors Corp.*,

10

883 F.2d 287, 296 n.12 (4th Cir. 1989) (quoting J. White & R. Summers, Uniform Commercial Code § 4-3, at 186 (3d ed. 1988) (footnote omitted)).

Plaintiff argues the agreement was substantively unconscionable for the same reason it was an illusory promise—Cheesecake Factory did not agree to bind itself to arbitration. Plaintiff argues the agreement "lacks mutuality," because it forces Plaintiff to arbitrate claims against Defendant without likewise binding the Defendant to arbitration. But, the Court finds that as with the contract at issue in *Oumar Dieng*, "the proffer by the employer clearly implied that both the parties would be bound by the arbitration process," as discussed above. *Oumar Dieng*, 2009 U.S. Dist. LEXIS 58785 at *16. As described above, under *O'Neil*, an arbitration agreement does not have to specifically provide that the Defendant is bound to have the legal effect of binding the Defendant.

Plaintiff argues that the arbitration agreement is procedurally unconscionable because it was a "take it or leave it" unilaterally drafted agreement and the agreement was "an untitled inconspicuous paragraph on the final page of a sixty-six (66) page employee handbook." (Doc. No. 16 at 9). Plaintiff's first argument regarding procedural unconscionability is clearly precluded by ample legal authority establishing that a "take it or leave it" sort of arbitration agreement does not automatically render the agreement unconscionable. *See, e.g.*, *La'Tia Holloman v. Circuit City Stores, Inc.*, 894 A.2d 547, 560 (Md. 2006) (citations omitted). The Court does not question that the contract was one of adhesion. "A contract of adhesion, it is well settled, is one, usually prepared in printed form, 'drafted unilaterally by the dominant party and then presented on a take-it-or-leave-it basis to the weaker party who has no real opportunity to bargain about its terms.'" *La'Tia Holloman*, 894 A.2d at 560 (quoting Restatement (Second) of

11

Conflict of Laws §§ 187, Comment b (internal quotation marks omitted)). But, not every contract of adhesion is procedurally unconscionable. "[T]he fact that a contract is one of adhesion does not mean that it is automatically deemed per se unconscionable. Rather, '[a] court will . . . look at the contract and its terms with some special care . . .'" *Oumar Dieng*, 2009 U.S. Dist. LEXIS 58785 at *15 (quoting *Walther*, 386 Md. at 444). Here, the Court does not find the arbitration requirement be unfair.

The Court must confess that it does have some reservations about the agreement's inconspicuousness. First, the Court agrees that this arbitration agreement is somewhat buried amongst the policies of the Handbook. Though it appears in one of only nine paragraphs, it is not emboldened or capitalized as the policies at issue in *Oumar Dieng*. *See Oumar Dieng*, 2009 U.S. Dist. LEXIS 58785, at *14 (finding agreement not inconspicuous because "not buried in the middle of a lengthy contract nor was it written in fine print. Instead, the agreement was presented on the second page of two page document and was written in bold, underlined and CAPITALIZED lettering.") Nor, apparently, was there any other information about the policy that would alert the employee to the full scope of the arbitration agreement. *Cf. Hill v. PeopleSoft USA, Inc.*, 412 F.3d 540, 542 (4th Cir. 2005) ("The Arbitration Agreement also sets forth the process for requesting arbitration, the parties' rights concerning legal representation in the arbitration proceeding, the rules governing the selection of an arbitrator, the arbitrator's authority, the pleadings and extensive discovery allowed in the arbitration proceeding, the hearing procedure, and information regarding fees and costs."). Despite these concerns, the paragraph is separately initialed, and is one of only nine other paragraphs to be so initialed, and thus the Court concludes that it is not procedurally unconscionable. Indeed, two other courts

have determined that this very agreement does not run afoul of other states' contract formation rules. *See Cheesecake Factory Rests., Inc.*, 2010 U.S. Dist. LEXIS 9818 (finding consideration and valid arbitration agreement); *Cheesecake Factory, Inc.*, 2009 U.S. Dist. LEXIS 41883 (finding valid arbitration agreement).

### 2. Coverage of Instant Dispute

It is quite clear that the arbitration agreement at issue in this case is broad enough to cover a sexual harassment dispute. The agreement provides that any dispute will be covered. Given the presumption under U.S.C. § 9 in favor of arbitration, the Court must interpret the agreement as broadly as possible. Plaintiff contends that even if the arbitration agreement is valid, it does not cover sexual discrimination and harassment claims, because an agreement must specifically incorporate statutory claims somewhere in the agreement to actually do so. For this proposition, Plaintiff cites cases which are inapposite as they deal with collective bargaining agreements. *See, e.g.*, *Wright v. Universal Maritime Serve Corp*, 525 U.S. 70 (1998). As an Arizona federal district court found in interpreting this agreement, the language "plainly gives notice that the 'differences,' 'claims,' and/or 'disputes' to be resolved through arbitration are those related to employment by Cheesecake Factory." *Cheesecake Factory, Inc.*, 2009 U.S. Dist. LEXIS 41883 at *16-17.

### 3. Waiver

Plaintiff does not meet the high burden required to show a waiver of the right to arbitrate. "A litigant may waive its right to invoke the Federal Arbitration Act by so substantially utilizing the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985).

Indeed, the Plaintiff must show prejudice; "mere delay, without more, will not suffice to constitute waiver." *Id.* Plaintiff argues that Defendant's decision to remove the action from the Circuit Court for Montgomery County to the United States District Court and its subsequent delay in filing the Motion to Compel Arbitration constituted an affirmative waiver of its right to arbitration. Plaintiff argues that Defendant could have sought arbitration in this matter as early as January 2009, and instead has engaged in "forum shopping." (Doc. No. 16 at 13.) Finally, Plaintiff contends that the Court's granting the Motion to Compel Arbitration would severely prejudice him as Plaintiff has drafted interrogatories and document requests and devoted "significant time" to drafting discovery responses and reviewing documents in preparation for scheduled depositions. The court does not believe these sources of delay are sufficient to establish waiver. Plaintiff has not shown how limited participation in discovery and delay have prejudiced her. *See MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 251 (4th Cir. 2001) (finding neither "delay, nor the litigation surrounding the trade secrets claims, nor the expense associated with that litigation can support a finding of waiver"). Accordingly, the Court finds that Cheesecake Factory's delay in filing its motion to arbitrate does not constitute a waiver of its right to arbitrate.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion to Compel Arbitration. A separate Order will follow.

  June 7, 2010  　　　　　　　　　　　　　　　　　　　　/s/
      Date　　　　　　　　　　　　　　　　　　Alexander Williams, Jr.
　　　　　　　　　　　　　　　　　　　　　　United States District Judge